IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


BERTHA BATEY                              )
                                         )
        v.                               )        NO. 3:08-1185
                                         )
VANDERBILT HOSPITAL                      )


TO:  Honorable Todd J. Campbell, Chief District Judge


## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered December 11, 2008 (Docket Entry No. 4), the Court referred this action

to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or

recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to

conduct any further proceedings that may become necessary under Rule 72(b) of the Federal Rules

of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Defendant's Motion for Summary Judgment

(Docket Entry No. 24), to which the Plaintiff has filed a response in opposition (Docket Entry Nos.

40, 48, and 50-51).  Also before the Court is the Defendant's Reply (Docket Entry No. 42) and the

Plaintiff's own Motion for Summary Judgment (Docket Entry No. 49).  Set out below is the Court's

recommendation for disposition of the pending motions.

# I. BACKGROUND

The Plaintiff was employed at the Vanderbilt University Medical Center ("Vanderbilt") as a staff nurse in the Neuroscience Department from March 2004, to January 17, 2007, when her employment was terminated. <u>See</u> Affidavit of Diane Johnson (Docket Entry No. 28), at ¶ 3. The written notice of termination describes the incident which led to the termination as follows:

> 12-20-06 Rude and unprofessional behavior to colleagues reported by staff nurses and a patient family member.
>
> On 12-20-06, a staff member reported that Bertha stated to her "to get off the damn phone" and I'll take care of the patient myself. At this time the patient the nurse was trying to assist was not even Bertha's patient.
>
> While making rounds on 12-21-06 a family member spoke to me and told me that his father's nurse, Bertha, was very rude all night and did not help him to his satisfaction. He states he asked her several times during the night if his father needed the oxygen and was told by Bertha that she did not know and was too busy to look at the orders at the time. He was also very concerned about how he observed her working with the other staff members at the beginning of the shift.

<u>See</u> Attachments to Defendant's Appendix (Docket Entry No. 26-2), at 1.

Prior to her termination, the Plaintiff had received three written Performance Improvement Counselings ("PIC") on the dates of June 6, 2005, January 26, 2006, and November 15, 2006, respectively, for rude and/or unprofessional behavior. <u>See</u> Affidavit of Johnson, at ¶¶ 6-9 and 14; Exhibits to Plaintiff's First Amended Response (Docket Entry No. 48-3), at 13-14, 19, and 23. In each instance, the Plaintiff submitted a written response disputing the basis given for the PIC. <u>See</u> Affidavit of Johnson, at ¶¶ 8-9; Exhibits to Plaintiff's First Amended Response (Docket Entry No. 48-3), at 17-18, 20-22, and 24-26. The PIC issued November 15, 2006, was a final PIC, which is the third step in Vanderbilt's PIC progression and the final step before possible termination. <u>See</u> Affidavit of Johnson, at ¶¶ 7 and 14.

2

Subsequent to her termination, the Plaintiff unsuccessfully grieved her termination through Vanderbilt's Opportunity Development Center ("ODC") and through Vanderbilt's staff dispute resolution process. See Affidavit of Johnson, at ¶¶ 22-23; Exhibits to Plaintiff's First Amended Response (Docket Entry No. 48-5), at 38-62.

The Plaintiff also complained to the Equal Employment Opportunity Commission ("EEOC") and filed a formal Charge of Discrimination against Vanderbilt on November 8, 2007. See Complaint (Docket Entry No. 1) and attachments. The Plaintiff's charge asserted discrimination based on "race" and "age" and alleged the following:

> I was employed as a staff nurse since April 2004. I was discharged. The company employs more than 20 employees.
>
> I was discharged for unprofessional conduct, which was allegedly telling a young nurse to get off the phone. I have spoken to the assistant manager on numerous occasions regarding her use of profanity which is unprofessional.
>
> I believe I have been discriminated against because of my race/Black in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my age/61 in violation of the Age Discrimination in Employment Act.

Id. On September 4, 2008, the Plaintiff received a right to sue letter from the EEOC.

Acting pro se, the Plaintiff filed this action on December 2, 2008, seeking damages[1] and naming "Vanderbilt Hospital"[2] as the defendant. The Plaintiff filed a form complaint asserting that

---

[1] The amount of damages sought by the Plaintiff was originally $4,500,000.00. See Complaint. She subsequently revised this amount to $9,000,000.00, see Docket Entry No. 15, then to $75,000,000.00, see Docket Entry No. 49, at 3, and most recently to $100,000,000.00. See Docket Entry No. 51-1, at 3.

[2] In its answer, the Defendant noted that the correct identity of the Defendant is Vanderbilt University Medical Center rather than "Vanderbilt Hospital." See Docket Entry No. 11, at 1. The Plaintiff agrees that Vanderbilt University Medical Center is the correct name of the Defendant. See Docket Entry No. 50, at 2.

3

the action was brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e <u>et</u> <u>seq</u>., and that she was discriminated against because of her race and color. She also asserts that she was retaliated against for filing a charge of discrimination and that she was discriminated against because of her age, although she does not specifically refer to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, <u>et</u> <u>seq</u>. The Defendant filed an answer to the complaint (Docket Entry No. 11) denying the allegations of wrongdoing. A scheduling order (Docket Entry No. 21) has been entered to facilitate pretrial activity in the action. A trial date is not set in the action, and neither party has demanded a trial by jury.

## II. THE PLAINTIFF'S COMPLAINT

The Plaintiff makes five separate claims of unlawful discrimination:

1. Vanderbilt created an offensive work environment with frequent written reprimands;

2. Vanderbilt accepted and/or allowed other younger employees to use "intimidating acts;"

3. Vanderbilt accepted a decrease in the basic standard of care and allowed others to denounce claimant for providing high quality care;

4. Vanderbilt failed to acknowledge the Plaintiff's request to provide leadership classes; and

5. Vanderbilt terminated the Plaintiff's employment although "a non-African American female reported the same adverse situation that Plaintiff was told to 'just hang in their (sic).'"

<u>See</u> Complaint, at 3-4.

In support of her claim of retaliation, the Plaintiff alleges:

[Vanderbilt] "called new employer with false statement. According to the Human Resources Director for Amerigroup, Inc., she (Connie Yates) received a call from

4

Vanderbilt stating that I (claimant) went to Vanderbilt and said I represented Amerigroup."

Id.

The Plaintiff also checked-marked in her complaint that Vanderbilt "failed to promote plaintiff." Id. However, she does not set forth in her complaint any factual allegations regarding a failure to promote.

### III. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Defendant argues that the claims of color discrimination and retaliation should be dismissed because the claims were not included in the Plaintiff's charge of discrimination. Alternatively, the Defendant contends that the claims should be dismissed on their merits because the undisputed facts do not support such claims.

With respect to the race and age discrimination claims, the Defendant argues that the Plaintiff cannot establish a prima facie case for the claims. Alternatively, the Defendant contends that, even if the Plaintiff established a prima facie case, it sets forth a legitimate, nondiscriminatory reason for the decision to terminate the Plaintiff's employment and the Plaintiff cannot set forth facts showing that the asserted reason was pretext for unlawful discrimination based on race or age.

The Defendant supports its motion with a copy of the Plaintiff's deposition (Docket Entry No. 26-1) and exhibits to her deposition (Docket Entry No. 26-2), a copy of the Plaintiff's employment records from Amerigroup, Inc ("Amerigroup") (Docket Entry No. 23-1), and the affidavits of Diane Johnson (Docket Entry No. 28), Norma Scarlett (Docket Entry No. 29), Lynn Price (Docket Entry No. 30), and Donna Garay (Docket Entry No. 33).

5

## IV. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff seeks summary judgment in her favor contending that she and her family have been damaged by the Defendant's actions and alleging that "Defendant intentionally and deliberately tried to destroy and obstruct Plaintiff and her family professionally, personally, their life styles and caused disparate impacts without recourse." See Docket Entry No. 49, at 2. In support, she relies on the documents submitted as attachments to her response to the motion for summary judgment. See Docket Entry No. 49, at 6-9 and Docket Entry No. 48.

## V. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Rule 56(c) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon County, 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

6

(1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support her position; "a mere scintilla of evidence is insufficient." Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003).

7

## VI. ANALYSIS

A. Color Discrimination and Retaliation

      In the charge of discrimination filed by the Plaintiff with the EEOC on November 8, 2007, she did not specifically allege that she was the victim of either discrimination because of her color or retaliation.  See Attachments to Complaint (Docket Entry No. 1-1), at 1.  In her response in opposition to summary judgment, she appears to concede that her complaint raises only claims of race and age discrimination.  See Docket Entry No. 48, at 22.  Regardless, the color discrimination and retaliation claims, even if clearly before the Court, suffer from a fatal flaw because they were not presented to the EEOC.

      Generally, a claim asserted under Title VII may not be brought in federal court unless the claim was first presented to the EEOC.  See Tisdale v. Federal Express Corp., 415 F.3d 516, 527-28 (6th Cir. 2005); Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992).  The general rule is subject to an exception allowing claims not alleged in the charge of discrimination to be heard if the claims could reasonably be expected to grow out of the charge of discrimination that was filed.  See Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991).  This situation arises "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim."  Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998).

      The Court finds that such an exception does not apply to the instant action.  Summary judgment should be granted to the Defendant on the claims of color discrimination and retaliation because the claims were not administratively exhausted through presentation to the EEOC.  The Plaintiff has not argued that the color discrimination and retaliation claims arise out of her charge

8

of discrimination and should be heard, see Docket Entry Nos. 48 and 50, and the Court's review of the claims reveals no basis for permitting the claims to be heard.[3]

Discrimination on account of color and discrimination on account of race are distinct claims. See Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 123, 133 n.5 (4th Cir. 2002). Merely alleging racial discrimination is not sufficient to raise a claim of color discrimination. See Carter v. Delaware County Bd. of Com'rs, 2009 WL 544907 (S.D. Ohio Mar. 3, 2009); Moore v. Food Lion, 2007 WL 596955 (M.D. Tenn. Feb.21, 2007). Nothing was alleged in the Plaintiff's charge of discrimination which would cause a claim of color discrimination to have been reasonably expected to grow out of her allegations of racial discrimination.

With respect to the retaliation claim, the Plaintiff contends that Vanderbilt retaliated against her several months[4] after her termination when a Vanderbilt employee made false statements about her during a telephone conversation between the Vanderbilt employee and Connie Yates, the Human Resources Director at Amerigroup where the Plaintiff's was employed at the time. Given the nature of this claim, the Defendant correctly acknowledges that the United States Supreme Court recognized in Robinson v. Shell Oil Co., 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), that a plaintiff may bring a retaliation claim against a former employer based on allegations that the

_____

[3] In reviewing these claims, the Court has liberally construed the Plaintiff's charge of discrimination and provided it with a broad reading as is required because she filed her charge without the benefit of counsel. See Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 832 (6th Cir. 1999); Haithcock, 958 F.2d at 675.

[4] The Plaintiff does not state exactly when the retaliatory act is alleged to have occurred but her deposition testimony suggests that it occurred sometime in the summer of 2008. See Plaintiff's Deposition (Docket Entry No. 26-1), at 5-6. If this testimony is accurate, the alleged retaliation occurred approximately 18 months after her termination from Vanderbilt and at least 6 months after the filing of her charge of discrimination.

9

former employer gave a negative reference about the plaintiff to a perspective employer.  See Defendant's Memorandum in Support (Docket Entry No. 25), at 23.[5]

Thus, the pertinent question becomes whether the Plaintiff must have raised a post-termination claim of retaliation in a second charge of discrimination or whether such a claim can reasonably be expected to grow from the underlying charge of discrimination that  she filed regarding her termination.  The Court finds the answer to the question to be the former.  There were no facts alleged in the charge of discrimination filed by the Plaintiff which raise the specter of retaliation.  The alleged retaliatory act occurred more than a year after the Plaintiff was terminated by the Defendant and was far removed from any employee/employer activity or relationship between the Plaintiff and the Defendant.  In such a case, the Plaintiff should be required to file a separate charge of discrimination asserting retaliation.[6]  The circumstances in this case are readily distinguishable from situations in which a plaintiff relates facts to the EEOC which would have prompted an investigation into retaliation or in which the alleged act of retaliation naturally grows out of the underlying discrimination charge.  See Tisdale, 415 F.3d at 528; Duggins, 195 F.3d at 832-33.

---

[5] Because the Court finds the Plaintiff's retaliation claim should be dismissed because it was not administratively exhausted before the EEOC, the Court offers no opinion on the merits of any of the Defendant's other arguments related to the retaliation claim.

[6] Although the Supreme Court in Robinson does not indicate whether the plaintiff in that case filed a charge of discrimination asserting his retaliation claim, the appellate briefs in the case indicate that the plaintiff had filed a separate charge of discrimination alleging a retaliation claim.

10

B. The Plaintiff's Remaining Claims under Title VII

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individual's . . . race ." See 42 U.S.C. § 2000e-2(a)(1). In her complaint, the Plaintiff makes four distinct claims which clearly warrant summary judgment in favor of the Defendant.

Two of the Plaintiff's claims are that "Vanderbilt accepted a decrease in the basic standard of care and allowed others to denounce claimant for providing high quality care" and that "Vanderbilt failed to acknowledge the Plaintiff's request to provide leadership classes." See Complaint, at 3. Similarly, in her response to the motion for summary judgment, the Plaintiff complains about "professional jealousy," "imaginary perceptions," and "girlie jealousy" in the workplace. See Docket Entry No. 48, at 26-29 and Docket Entry No. 50, at 3. Even if these allegations are taken as true, however, they fail to amount to unlawful activity under Title VII.

Federal civil rights laws do "not guarantee a utopian workplace, or even a pleasant one," Vore v. Indiana Bell Tel. Co., Inc., 32 F.3d 1161, 1162 (7th Cir. 1994), and Title VII is not intended to redress general employee dissatisfaction or to remedy every workplace dispute. See White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 795 (6th Cir. 2004), aff'd Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). An employee's "bruised ego" does not support a Title VII claim, Freeman v. Potter, 200 Fed. Appx. 439, 442 (6th Cir. Oct. 4, 2006) (citing Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 886 (6th Cir. 1996)), nor does personal conflict equate with a discriminatory animus. See Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 342-43 (6th Cir. 1998), cert. denied, 525 U.S. 1106, 119 S.Ct. 875, 142 L.Ed.2d 775

11

(1999). Finally, in the absence of evidence of a materially adverse employment action by the employer,[7] the mere fact that a plaintiff shows that she was treated differently in some respects than other employees outside the protected class is not sufficient to support a claim under Title VII. See Laurence v. Gateway Health Sys., 2008 WL 2097390 (M.D. Tenn. May 16, 2008). The above noted complaints made by the Plaintiff simply do not evidence racially discriminatory conduct.

The Plaintiff also claims that "Vanderbilt created an offensive work environment with frequent written reprimands." See Complaint, at 3.[8] A hostile work environment exists when the workplace is permeated with racial intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the Plaintiff's employment, and if an objectively reasonable person would view, and the Plaintiff herself did view, the environment as abusive. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). See also Barrett v. Whirlpool Co., 556 F.3d 502, 515 (6th Cir. 2009). However, a hostile workplace claim cannot be predicated upon evidence of mere conflict, dissension, or turmoil in the workplace. There must be actual evidence of racial animus. See Arendale v. City of Memphis, 519 F.3d 587, 605-06 (6th Cir. 2008). The Plaintiff fails to offer any evidence whatsoever that her workplace was

---

[7] For Title VII purposes, an "adverse employment action" is "a materially adverse change in the terms or conditions of employment because of the employer's conduct." Mitchell v. Vanderbilt Univ., 389 F.3d 177, 185 (6th Cir. 2005) (internal quotation omitted). An "adverse employment action" will usually require a change in job position or status that is "more disruptive than a mere inconvenience or an alteration of job responsibilities" and "the Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 885-86 (6th Cir. 1996) (internal quotation omitted).

[8] The Plaintiff's claim that Vanderbilt allowed "younger employees to use intimidating acts" is analyzed infra under the ADEA.

12

permeated with racially tinged intimidation, ridicule, or insult.[9] Her assertion that she was given frequent written reprimands falls far short of showing that she was subjected to a racially hostile work environment.[10]

The Plaintiff also claims that Vanderbilt "failed to promote [her]." See Complaint, at 3. However, she has not explained the factual basis for such a claim, including what specific promotion she believes she was wrongfully denied, let alone offered the factual support necessary to proceed to trial on a failure to promote claim. See Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000).

The Plaintiff's remaining claim under Title VII is the claim that she was wrongfully terminated. To prevail on this claim, the Plaintiff "must offer direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." Johnson v. Kroger Co., 319 F.3d 858, 864-65 (6th Cir. 2003); Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985).

The Plaintiff has not identified any direct evidence[11] supporting her claim. In the absence of direct evidence, the Plaintiff's claim is analyzed under the burden-shifting, evidentiary framework

---

[9] In her deposition, the Plaintiff fails to offer any evidence of racially derogatory remarks or other racially offensive conduct in the workplace. See Plaintiff's Deposition (Docket Entry No. 26-1), at 30.

[10] The Plaintiff admits to not knowing whether or not other nurses also received written reprimands. See Plaintiff's Deposition (Docket Entry No. 26-1), at 30.

[11] Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp., 176 F.2d 921, 926 (6th Cir. 1999). "Direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson, 319 F.3d at 865.

13

for cases based upon circumstantial evidence set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1972), and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981). Under this framework, if the Plaintiff establishes a <u>prima facie</u> case of discrimination, a rebuttable presumption of unlawful discrimination has been established and the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for the challenged action. <u>Burdine</u>, 450 U.S. at 254-56. Upon the Defendant's offer of a legitimate reason, the burden shifts back to the Plaintiff to demonstrate that the proferred reason is pretextual, masking intentional discrimination. <u>Dews</u>, 231 F.3d at 1021. The ultimate burden of persuasion always remains with the Plaintiff. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511, 517-18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

To establish a <u>prima facie</u> case of a discriminatory termination, the Plaintiff must show that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position from which she was fired; and (4) she was replaced by a person outside the protected class or was treated differently than similarly situated non-protected employees. <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 610 (6th Cir. 2002); <u>Newman v. Fed. Express Corp.</u>, 266 F.3d 401, 406 (6th Cir. 2001); <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 582-83 (6th Cir. 1992).

By not addressing the first three elements of the <u>prima facie</u> case, the Defendant apparently concedes that the Plaintiff satisfies these elements. With respect to the fourth element, the Plaintiff admits that she does not know who replaced her. <u>See</u> Plaintiff's Deposition (Docket Entry No. 26-1), at 50, p. 197; Plaintiff's Responses to Statement of Undisputed Facts (Docket Entry No. 40), at

14

30, ¶ 95.  Thus, she cannot show that she was replaced by a person outside the protected class.[12]

Accordingly, to satisfy the fourth prong of her prima facie case, the Plaintiff must show that she was

treated differently than similarly situated employee(s) who were not in the protected class.

The Plaintiff must demonstrate that the comparable employee is similarly-situated in all

relevant aspects.  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998).

The Sixth Circuit stated in Ercegovich:

> The plaintiff need not demonstrate an exact correlation with the employee receiving
> more favorable treatment in order for the two to be considered "similarly-situated;"
> rather, as this court has held in Pierce [v. Commonwealth Life Ins. Co., 40 F.3d 796,
> 802 (6th Cir. 1994)], the plaintiff and the employee with whom the plaintiff seeks to
> compare himself or herself must be similar in "all of the relevant aspects."

Id. (citation and footnote omitted).

It is the Plaintiff's burden to satisfy the elements of her prima facie case.  See Noble v.

Brinker Int'l, Inc., 391 F.3d 715, 731 (6th Cir. 2004).  For the Plaintiff to carry her burden on the

similarly-situated element, there are essentially two requirements that must be met.   First, the

employee with whom the Plaintiff is comparing herself must be similarly-situated to the Plaintiff

in terms of job duties, position, and/or responsibilities.  See Humenny v. Genex Corp., 390 F.3d 901,

906 (6th Cir. 2004).   Merely comparing herself to another employee of the Defendant is not

sufficient to satisfy the similarly-situated requirement.   Second, the conduct of the comparable

employee who the Plaintiff contends received more favorable treatment must be of "comparable

seriousness" to the conduct of the Plaintiff which is at issue.  See Wright v. Murray Guard, Inc., 455

---

[12] The Plaintiff states in her First Amended Response that she provides proof of replacement by a person outside of her protected class via Exhibits C1-C3, T1-T2, and Q1-Q4.  See Docket Entry No. 48, at 23.  However, the Court has reviewed Exhibits C1-C3 (Docket Entry No. 48-3, at 1-5) and T1-T2 (Docket Entry No. 48-5, at 73-74), respectively, and they do not offer any proof of the identity or race of the person who replaced the Plaintiff.  The Court is unable to locate Exhibits Q1-Q4 in the materials provided by the Plaintiff.

15

F.3d 702, 707 (6th Cir. 2006); Clayton, 281 F.3d at 611. As the Sixth Circuit has held, the employees to whom the Plaintiff seeks to compare herself must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.

Although it is somewhat difficult to determine, the Plaintiff appears to assert that six, white female employees – Donna Garay, Lynn Price, Diane Johnson, Norma Scarlett, Paula Lampman and Leslie Blanton - were treated more favorably than she was. See Plaintiff's First Amended Response (Docket Entry No. 48), at 23-24. However, the Plaintiff fails to show that these six individuals were similarly situated to her in all relevant aspects.

First, the Plaintiff has not offered evidence showing that any of the six individuals had a similar employment status to her in terms of job duties, position, or responsibilities. While all six were health care employees at Vanderbilt, the Plaintiff has the burden of showing that these individuals were either staff nurses, as she was, or that, although they held different positions, they could nonetheless be viewed as being similarly-situated to the Plaintiff in terms of the nature of their jobs at Vanderbilt.

Second, the Plaintiff has also not offered evidence showing that any of the six individuals engaged in misconduct at Vanderbilt of comparable seriousness to that upon which the Defendant relied to support the Plaintiff's termination. There is no proof before the Court that any of the six individuals had a documented history of having received written PICs for rude and/or unprofessional behavior while working for the Defendant, let alone that any of them had received a Final PIC. Although the Plaintiff sets forth evidence that Norma Scarlett was subject to a disciplinary action by the Tennessee Board of Nursing, which was in effect between 2005 and 2007 during Scarlett's

16

employment at Vanderbilt, the evidence shows that the disciplinary action was based upon events which occurred prior to Scarlett's employment at Vanderbilt. See Docket Entry No. 48-3, at 6; Docket Entry No. 48-6. Thus, this evidence fails to have any relevance to the similarly-situated showing.

The Plaintiff asserts that five of the individuals - Garay, Price, Johnson, Scarlett, and Lampman – were transferred to other areas within Vanderbilt or to different shifts yet she was not offered "alternative employment opportunit[ies]." See Docket Entry No. 48, at 24. Although not clearly stated by the Plaintiff, the inference she attempts to make is that these five employees were transferred instead of being terminated in response to incidents of misconduct. However, the Plaintiff does not offer any evidence of what misconduct purportedly occurred in each case, any evidence showing that a transfer of these employees actually occurred, or any evidence which links a transfer to an instance of misconduct.

The Plaintiff points to two specific examples of what she believes is evidence of differing treatment between herself and two of the six individuals. She contends that Lynn Price frequently used profanity yet was not terminated. See Plaintiff's Deposition (Docket Entry No. 26-1), at 28. It is true that the PIC which led to the Plaintiff's termination included a statement that the Plaintiff had told a staff member to "'get off the damn phone' and I'll take care of the patient myself." See Docket Entry No. 26-2, at 1. However, there is no evidence that the Plaintiff was terminated merely because she was alleged to have used profanity. The Plaintiff also asserts that both she and Donna Garay[13] reported the events which occurred on December 20, 2006, to Diane Johnson, the Plaintiff's

---

[13] Donna Garay is also referred to as "Dolly" by the Plaintiff. See Plaintiff's Deposition (Docket Entry No. 26-1), at 7.

17

supervisor at Vanderbilt, yet only the Plaintiff was terminated based upon these events. <u>See</u> Plaintiff's Objection and Motion of Denial of Summary Judgment (Docket Entry No. 50), at 3. However, the Plaintiff's contention fails to support her <u>prima facie</u> case. Initially, there is no evidence that the mere act of reporting events to Diane Johnson was in any way a factor in the Plaintiff's termination. The Plaintiff has not offered any proof that she was disciplined for making a report to Diane Johnson. Thus, the fact that both the Plaintiff and Ms. Garay reported the events of December 20, 2006, to Diane Johnson yet only the Plaintiff subsequently suffered an adverse action is not probative of her <u>prima facie</u> case. Furthermore, the PIC detailing the Plaintiff's termination clearly included more than just the events involving the Plaintiff and Ms. Garay and also detailed an incident involving the Plaintiff and a patient's family member. <u>See</u> Docket Entry No. 26-2, at 1.

The Plaintiff's inability to satisfy her <u>prima facie</u> case is sufficient to warrant dismissal of her Title VII wrongful termination claim. However, even if the Plaintiff had satisfied this burden, her claim would warrant dismissal because her evidence fails on the issue of pretext.

The Defendant contends that the Plaintiff was terminated because the events of December 20, 2006, justified her termination in light of the nature of the incidents at issue, the prior history of PICs the Plaintiff had received for rude and unprofessional behavior, and the fact that she was on an active final PIC at the time of the events of December 20, 2006. <u>See</u> Affidavit of Diane Johnson (Docket Entry No. 28), at ¶ 20. In the face of the Defendant's articulated and legitimate non-discriminatory reason for her termination, it is the Plaintiff's burden to show that this stated reason was a pretext for racial discrimination. The Plaintiff can demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or

(3) was insufficient to warrant the challenged conduct. <u>Dews</u>, 231 F.3d at 1021. <u>See</u> <u>also</u> <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381, 393 (6th Cir. 2008); <u>Manzer v. Diamond Shamrock Chem. Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).

The Plaintiff does not directly challenge the Defendant's asserted reason under any of the three showings provided in <u>Dews</u>. Instead, the Plaintiff disagrees with the correctness of the facts underlying the termination as asserted by the Defendant and contends that the termination was unjustified. However, the Plaintiff's disagreement with the facts underlying her termination does not defeat summary judgment as long as the Defendant had an honest belief in its proffered nondiscriminatory reason. <u>Sybrandt v. Home Depot, U.S.A., Inc.</u>, 560 F.3d 553, 558-59 (6th Cir. 2009); <u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 598 (6th Cir. 2007); <u>Majewski v. Automatic Data Processing, Inc.</u>, 274 F.3d 1106, 1117 (6th Cir. 2001).

To determine whether Vanderbilt had an "honest belief" in the proffered basis for terminating the Plaintiff, the Court must consider whether Vanderbilt can establish reasonable reliance on particularized facts that were before it at the time the decision was made. <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488, 494 (6th Cir. 2001). In the instant action, Vanderbilt has met this requirement.

The Plaintiff obviously does not agree with the decision and sets forth evidence showing the existence of factual disputes about the events of December 20, 2006. However, this alone is not sufficient to negate the Defendant's honest belief in the proffered reason for the termination. In deciding whether an employer reasonably relied on the particularized facts then before it, the Court does not require that the decisional process used by the employer be optimal or that it leave no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and

19

considered decision before taking an adverse employment action. See Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998). Further, the soundness of an employer's decision is not a matter of concern as long as the employer has not made decisions based on grounds forbidden by federal law. See Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006).

The ultimate issue is not whether or not the Plaintiff should have been terminated, but whether there is evidence that the Plaintiff was terminated because of her race. The Plaintiff's proof on the issue of pretext is simply not sufficient to raise a genuine issue of material fact and she fails to show that summary judgment should not be granted to the Defendant on this claim. No reasonable jury could find in favor of the Plaintiff's Title VII claim based on the evidence which is before the Court.

C. Age Discrimination Claim

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). An employee can establish an age discrimination case by either direct or circumstantial evidence. Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009); Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997).

To the extent that the Plaintiff contends that her termination violated the ADEA, she has offered no direct evidence in support of such a claim and the Court applies the same McDonnell Douglas burden shifting framework as was used in her racial discrimination claim. Geiger, 579 F.3d at 622; Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 547 (6th Cir. 2004).[14] Thus,

_____

[14] In Gross v. FBL Fin. Servs. Inc., __U.S.__, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), the Supreme Court expressly declined to decide whether the McDonnell Douglas test applies to the

the Plaintiff must show: (1) that she was at least forty years old at the time of the alleged discrimination; (2) that she was discharged; (3) that she was qualified for the position she held; and (4) that she was replaced by a younger worker or was treated differently from similarly situated employees under forty years of age. Geiger, supra; Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410 (6th Cir. 2008); Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1180 (6th Cir. 1983). See also Schoonmaker v. Spartan Graphics Leasing, LLC, __F.3d__, 2010 WL 364185, *2 (6th Cir. Feb. 3, 2010).

If the Plaintiff establishes a prima facie case, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its employment action. Kline, 128 F.3d at 342. Once the Defendant meets this burden, the Plaintiff must show that the reason articulated was a pretext for age discrimination. Danielson v. City of Lorain, 938 F.2d 681, 683 (6th Cir. 1991). The Plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994). The Plaintiff may do this by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate Defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. See Schoonmaker, supra; Allen v. Highlands Hosp. Corp., 545 F.3d 387, 396; Manzer, 29 F.3d at 1084; Best v. Blount Memorial Hosp., 195 F.Supp.2d 1034, 1042 (E.D. Tenn. 2001). The Plaintiff retains the ultimate burden of showing that "age was the 'but for' cause of the employer's adverse action." Gross v. FBL Fin. Servs. Inc., __U.S.__, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009); Harris v. Metropolitan Gov't of Nashville and Davidson County, Tenn., __F.3d__, (6th Cir. Feb. 5, 2010).

---

ADEA. However, in Geiger, the Sixth Circuit recently held that the McDonnell Douglas framework may still be used to analyze ADEA claims based on circumstantial evidence. 579 F.3d at 622.

The Plaintiff's ADEA wrongful termination claim fails for the same reasons as set out supra with respect to the Plaintiff's Title VII wrongful termination claim. She has offered insufficient evidence supporting the elements of her prima facie case. Specifically, she fails to satisfy the required showing that she was treated differently than similarly situated employees under the age of forty years. Further, the proof she offers fails to satisfy her burden of showing pretext in the face of the legitimate, nondiscriminatory reason offered by the Defendant.

The Plaintiff also alleges that Vanderbilt allowed younger employees to use "intimidating acts." See Complaint at 3. The Court construes this allegation as a claim under the ADEA that she was subjected to a work environment that was hostile toward her because of her age. Two of the required showings for any claim of age-based harassment are that the Plaintiff show that she was harassed on the basis of age and show that the harassment unreasonably interfered with her work environment and created a hostile work environment. See Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834-35 (6th Cir. 1996). In her deposition, the Plaintiff explains the incidents which form the basis for this claim. See Plaintiff's Deposition (Docket Entry No. 26-1), at 30-31. Even if true, these incidents fail to satisfy these required showings. First and foremost, none of the incidents involved actual harassment based on age. They simply involved employees who are younger than the Plaintiff. Inferring a discriminatory animus from these events is simply conjecture. Further, the incidents fall far short of rising to the level of severe or pervasive harassment which unreasonably interfered with the Plaintiff's work environment. At best, the incidents were minor and/or insignificant.

22

D. The Plaintiff's Motion for Summary Judgment

The deadline for filing dispositive motions was July 20, 2009.  See Scheduling Order (Docket Entry No. 21), at 3.  Thus, the motion for summary judgment filed by the Plaintiff on November 5, 2009, is untimely and warrants dismissal for this reason alone.

Nonetheless, dismissal of the motion is warranted even if it had been timely filed.  The Plaintiff has not shown that she is entitled to summary judgment in her favor on the claims she sets out in her complaint.  To the contrary, as is set out supra, the Court finds that summary judgment should be granted to the Defendant on the Plaintiff's claims.

To the extent that the Plaintiff seeks to raise a new claim based on allegations that the Defendant "intentionally and deliberately tried to destroy and obstruct Plaintiff and her family professionally, personally, their life styles and caused disparate impacts without recourse," see Docket Entry No. 49, at 2, such a claim is not properly before the Court.  The Plaintiff has not amended her complaint to include such a claim and the time for amendment of the pleadings expired on May 26, 2009.  See Scheduling Order (Docket Entry No. 21), at 2.  Further, such a claim is not supported by the evidence presented by the Plaintiff.

Finally, to the extent that the Plaintiff's filing can be construed as being a part of her overall response to the Defendant's motion for summary judgment, the Sixth Circuit has held that new claims may not be brought in response to a motion for summary judgment.  Tucker v. Union of Needletrades, Indus., & Textile Employees., 407 F.3d 784 (6th Cir. 2005).

Case 3:08-cv-01185   Document 64   Filed 02/08/10   Page 23 of 24 PageID #: 735

# RECOMMENDATION

For the reasons set out above, the Court respectfully RECOMMENDS:

1) that the motion for summary judgment of Defendant Vanderbilt University Medical Center (Docket Entry No. 24) be GRANTED and the Plaintiff's claims be DISMISSED WITH PREJUDICE;

2) the motion of the Plaintiff Bertha Batey (Docket Entry No. 50) to deny to the Defendant's motion for summary judgment be DENIED; and

3) the motion of Plaintiff Bertha Batey (Docket Entry No. 49) for summary judgment be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET  GRIFFIN
United States Magistrate Judge

24